**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronco Cardenas,<br><br>                      Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>                      Respondents. | No. CV-21-00431-TUC-RM (MSA)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Ronco Cardenas, an Arizona state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. Respondents argue that relief should be denied because the petition is untimely, some of Petitioner's claims are procedurally defaulted without excuse, and the claims that are not defaulted lack merit. While the Court disagrees that the petition is untimely, it agrees that several claims are procedurally barred and that the remaining claims lack merit. The Court will recommend that the petition be denied.

**Background**

In December 2015, Petitioner and his friend, Amy Martin, "broke a window of the victim's home, entered, and took several items with a total value in excess of $1,000, including tools and jewelry." (Doc. 10-1 at 56.) Petitioner "pawned several of the stolen items and later returned to the victim's home and attempted to reenter." (*Id.*) For his conduct, Petitioner was charged with burglary, attempted burglary, theft, and trafficking in stolen property.[1] (*Id.* at 3–4.)

---

[1] Petitioner was also charged with two drug offenses. (Doc. 10-1 at 3.) Those charges were later dropped. (Doc. 1-4 at 6.)

1     In January 2016, the state extended a plea offer that would have required Petitioner to plead guilty to two class-three felonies. (Doc. 1-5 at 24.) The offer made probation unavailable, so Petitioner, who desired probation, rejected it. (*Id.* at 25, 79–80.)

Later that year, the parties appeared for a settlement conference before a superior court judge. (*Id.* at 30.) During a discussion about the evidence against Petitioner, the judge emphasized that Petitioner's version of the events was problematic and unlikely to satisfy a jury—especially because recorded phone calls showed Petitioner had not only asked Martin to take the blame, but he had helped her write an admission too. (*Id.* at 33–49.) The judge explained that someone with Petitioner's criminal history (nine historical priors) would not be offered a probation-only sentence, but the judge suggested that it would be appropriate to make an offer for a term of prison with a probation tail. (*Id.* at 48, 54–70.) The prosecutor agreed to present the proposal to his supervisors. (*Id.* at 69–70.)

In mid-July 2016, the state made a second plea offer. (*Id.* at 85–89.) Under this offer, Petitioner would have pleaded guilty to a class-two felony with no probation available, and to a class-three felony with probation available. (*Id.* at 85–86.) Defense counsel presented the offer to Petitioner on July 31, during a 40-minute visit at the jail. (Doc. 1-6 at 32.) The parties then held a change-of-plea and *Donald* hearing on August 2—the deadline the prosecutor had set for accepting the offer.[2] (*Id.* at 11–12.)

At the hearing, Petitioner requested new counsel. (*Id.* at 11.) He asserted that counsel had not told him about the settlement conference in advance, had failed to ask the prosecutor why the second offer did not match the one discussed during the conference, and had given him too little time to consider the offer. (*Id.* at 13–15.) The judge allowed Petitioner's counsel to withdraw and then continued with the *Donald* hearing. (*Id.* at 16.) The judge explained the consequences of accepting the plea versus being convicted at trial. (*Id.* at 17–19.) Petitioner confirmed that he had read the offer, discussed it with his former counsel (who was still present), had all his questions about it answered, and was voluntarily

---

[2] The purpose of a *Donald* hearing is to ensure, on the record, that the defendant understands the outstanding plea offer and is knowingly and voluntarily rejecting it. *State v. Mendoza*, 455 P.3d 705, 715 (Ariz. Ct. App. 2019) (quoting *Missouri v. Frye*, 566 U.S. 134, 146 (2012)).

rejecting it. (*Id.* at 17, 19.) At the end of the hearing, the prosecutor sought to clarify that Petitioner's issues with his former counsel "didn't involve the explanation and understanding of the plea agreement." (*Id.* at 19–20.) When prompted to speak, Petitioner stated that he had "[n]othing more." (*Id.* at 20.)

Petitioner proceeded to trial and was convicted of all counts. (Doc. 10-1 at 18–19.) He was sentenced to concurrent and consecutive terms of imprisonment totaling 27 years. (*Id.* at 23–25.) After Petitioner's convictions and sentences were affirmed on direct appeal, he sought postconviction relief on the ground that he had received ineffective assistance of counsel. (*Id.* at 56–57; Doc. 1-4 at 2–32.) The trial court denied relief. (Doc. 1-4 at 34–44.) The Arizona Court of Appeals granted review but also denied relief. (*Id.* at 70–74.) The Arizona Supreme Court denied review. (Doc. 1-5 at 18.) This action followed.

## Discussion

### I. Statute of Limitation

Respondents argue that the petition is untimely. The Court disagrees.

#### A. Legal Standard

This habeas action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). As relevant here, AEDPA requires that a state prisoner file for federal habeas relief within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitation period is statutorily tolled during the pendency of a "properly filed application for State post-conviction or other collateral review." *Id.* § 2244(d)(2).

#### B. Analysis

The petition is timely with the benefit of statutory tolling. On May 7, 2018, the Arizona Court of Appeals denied relief in Petitioner's direct appeal. (Doc. 10-1 at 55–57.) Petitioner did not seek discretionary review in the Arizona Supreme Court, so the judgment became final—and the statute of limitation began running—when the time for seeking such review expired. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). That was on June 6, 2018.

*See* Ariz. R. Crim. P. 31.21(b)(2)(A) (a party has 30 days to file a petition for review).

In Arizona, a postconviction petition becomes pending, and statutory tolling begins, when the prisoner files a notice of postconviction relief. *Isley v. Ariz. Dep't of Corr.*, 383 F.3d 1054, 1056 (9th Cir. 2004). When, as here, the Arizona Court of Appeals denies relief in a formal opinion, the petition remains pending until that court issues its mandate. *Carver v. Shinn*, No. CV-19-3755-PHX, 2021 WL 1700723, at *5 (D. Ariz. Apr. 6, 2021), *R. & R. adopted by* 2021 WL 3550204 (Aug. 11, 2021). In Petitioner's case, tolling began on July 5, 2018, when he filed his notice of postconviction relief. (Doc. 10-1 at 65–66.) At that point, the limitation period had run for 29 days. Tolling stopped on March 8, 2021, when the Arizona Court of Appeals issued its mandate. (Doc. 1-5 at 20.) Accounting for the 29 days that had already elapsed, Petitioner had until February 7, 2022, to file his federal petition. He filed on October 20, 2021, so his petition is timely. (Doc. 1 at 48.)

Respondents argue that tolling stopped on October 23, 2020, when the Arizona Supreme Court denied review. (Doc. 1-5 at 18.) This would make the petition untimely by about two weeks. However, the denial of review ends the pendency of a proceeding (and ends tolling) only when there is no mandate, i.e., when both the Arizona Court of Appeals and the Arizona Supreme Court deny review without a formal opinion. *See Bassett v. Ryan*, No. CV-19-8142-PCT, 2021 WL 6427668, at *5–7 (D. Ariz. Dec. 1, 2021), *R. & R. adopted sub nom by Bassett v. Shinn*, 2022 WL 112195 (Jan. 12, 2022). When the Arizona Court of Appeals grants review and issues a formal opinion, that court is required to issue a mandate, and the issuance of the mandate marks the end of the proceeding. *Compare Hemmerle v. Schriro*, 495 F.3d 1069, 1072, 1077 (9th Cir. 2007) (holding the proceeding ended when the Arizona Supreme Court denied review following the Arizona Court of Appeals' denial of review), *with Celaya v. Ryan*, 497 F. App'x 744, 745 (9th Cir. 2012) ("Under Arizona law, Celaya's post-conviction review . . . petition was 'pending' until the Arizona Court of Appeals issued the mandate concluding its review of that petition on November 30, 2000."). In this case, the Arizona Court of Appeals issued a formal opinion, so tolling continued until the mandate was issued.

## II. Procedural Default

Respondents argue that several of Petitioner's claims are either partially or completely procedurally defaulted. The Court agrees.

### A. Legal Standard

A claim is procedurally defaulted if the state court refuses to consider it based on "a state law ground that is independent of the federal question and adequate to support the judgment." *Guillory v. Allen*, 38 F.4th 849, 855 (9th Cir. 2022) (quoting *Walker v. Martin*, 562 U.S. 307, 315 (2011)). A claim is also procedurally defaulted if it is unexhausted, and "state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc). "[F]ederal habeas review of [procedurally defaulted] claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### B. Analysis

Petitioner raises seven claims. He claims that he was denied due process and effective assistance of counsel because (1)(a) he was denied counsel at the *Donald* hearing, and (b) counsel's deficient conduct prior to withdrawal caused him to lose a favorable plea agreement; (2) counsel failed to object to the prosecution's use of the recorded phone calls; (3) counsel failed to challenge the victim's testimony that he owned a ring that in fact belonged to Petitioner; (4) counsel failed to file a motion to suppress the victim's identification of Petitioner at a "one person show up"; and (5) counsel failed to file a sentencing memorandum and failed to visit Petitioner before the sentencing hearing. Petitioner also claims that (6) his consecutive sentences violate the Fifth Amendment's Double Jeopardy Clause and the Eighth Amendment's prohibition of cruel and unusual punishment; and that (7) appellate counsel for his direct appeal was ineffective for not raising a claim of structural error (i.e., denial of counsel at the *Donald* hearing).

**Claim (1)(a):** The trial court found that Petitioner waived this claim on direct

appeal. (Doc. 1-4 at 40.) If the Arizona Court of Appeals had adopted that finding in its opinion, there would be no question that Petitioner's claim is procedurally defaulted. *See Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014) ("Arizona's waiver rules are independent and adequate bases for denying relief." (citations omitted)). The court of appeals' decision, however, does not mention the trial court's procedural ruling. (*See* Doc. 1-4 at 71–74.)

Respondents argue that it is appropriate to "look through" to the trial court's decision—the last reasoned decision on the waiver issue—and presume that the court of appeals upheld that finding. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (creating a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"). It is not clear, however, that the look-through presumption applies. *Ylst* applied the presumption to a summary denial of review, not to a reasoned opinion that addressed some of the trial court's findings but not others. *Id.* at 805. In addition, in this circuit, courts generally review only the last of multiple reasoned decisions and may consider a lower court's findings only when they have been expressly adopted by a higher court. *Barker v. Fleming*, 423 F.3d 1085, 1092–93 (9th Cir. 2005).

Ultimately, the Court need not decide whether this claim is procedurally defaulted. The most favorable scenario for Petitioner is to have his claim reviewed de novo. As discussed in the next section, under that standard, he is not entitled to relief.

**Claims (1) through (5):** These claims are unexhausted to the extent they allege a violation of due process. To exhaust a claim, the petitioner must present the state court with a description of "both the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Walden v. Shinn*, 990 F.3d 1183, 1196 (9th Cir. 2021) (quoting *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008)). Petitioner's state-court briefing referenced the Sixth Amendment and raised claims of denial of counsel and ineffective assistance of counsel. His briefing did not mention due process or the Fifth or Fourteenth Amendments. Therefore, he did not properly present his due-process claims.

*See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (stating that exhaustion requires not only a statement of facts but also "reference to a specific federal constitutional guarantee").

These claims are procedurally defaulted because Petitioner cannot return to state court to exhaust them. In particular, state rules bar him from raising the claims in another postconviction petition because he could have raised them in his first, and the deadline for bringing his claims has passed. Ariz. R. Crim. P. 32.2(a)(3), 32.4(b)(3)(A). Petitioner does not argue that he can establish cause and prejudice, or that the denial of review would result in a fundamental miscarriage of justice. Therefore, review of these claims is barred.

**Claim (6):** This claim is unexhausted because Petitioner's state-court briefing does not mention the Fifth Amendment's Double Jeopardy Clause or the Eighth Amendment's prohibition of cruel and unusual punishment. Petitioner says this claim is exhausted because it was "part and parcel" of his claim for ineffective assistance of counsel at sentencing. While a claim can be exhausted "despite variations in the legal theory" if "the ultimate question for disposition" is the same, *Picard v. Connor*, 404 U.S. 270, 277 (1971) (quoting *United States ex rel. Kemp v. Pate*, 359 F.2d, 749, 751 (7th Cir. 1966)), the questions raised by Petitioner's claims are not the same. The question presented to the state courts was whether counsel's ineffectiveness led the trial court to impose a more severe sentence. *See Glover v. United States*, 531 U.S. 198, 202–04 (2001). That question is fundamentally different from whether the sentence constitutes multiple punishments for a single offense—the inquiry under the Fifth Amendment, *see Brown v. Ohio*, 432 U.S. 161, 165–66 (1977)—and whether the sentence was disproportionate to the crime—the inquiry under the Eighth Amendment, *see Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). Therefore, this claim was not properly presented.

The claim is procedurally defaulted because, as explained above, Petitioner cannot return to state court to exhaust it. Petitioner does not argue that he can establish cause and prejudice, or that the denial of review would result in a fundamental miscarriage of justice. Therefore, review of this claim is barred.

**Claim (7):** This claim is procedurally defaulted because Petitioner concedes that it

is unexhausted and, for the reasons stated above, he cannot return to state court to exhaust it. Petitioner argues that the default must be excused because he can establish cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012). The *Martinez* exception, however, does not apply to claims of ineffective assistance of appellate counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017). Petitioner does not argue that the denial of review would result in a fundamental miscarriage of justice. Therefore, review of this claim is barred.

**III.     Merits**

Respondents argue that Petitioner's remaining claims lack merit. The Court agrees.

**A.     Denial of Counsel (Claim (1)(a))**

In claim (1)(a), Petitioner alleges that he was denied counsel during a critical stage of his prosecution—the *Donald* hearing—because his counsel was allowed to withdraw. "The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 87 (2004) (citations omitted). This right is violated, and prejudice is presumed, when (1) there is a "complete denial of counsel," (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) "counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659–62 (1984)).

Petitioner's case does not fit any of these scenarios, so his claim is without merit. First, although Petitioner's counsel was allowed to withdraw, she was present on his behalf for the remainder of the hearing. Thus, counsel was not "either totally absent, or prevented from assisting [Petitioner] during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. Second, the purpose of the hearing was for Petitioner to accept or reject the plea offer; it did not present an opportunity for counsel—and thus counsel did not fail—to subject the prosecution's case to adversarial testing. And third, counsel was familiar with the case, so it was not "very likely" that she would perform incompetently. *Cf. Powell v. Alabama*, 287 U.S. 45, 57–58 (1932) (presuming prejudice because counsel was appointed on the first day of a capital murder trial).

**B.     Ineffective Assistance of Counsel (Claims (1)(b) through (5))**

      **1.     Legal Standard**

Under AEDPA, a federal court must defer to a state habeas court's decision on the merits unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Ross v. Davis*, 29 F.4th 1028, 1042 (9th Cir. 2022) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

The clearly established law governing Petitioner's ineffectiveness claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting a claim of ineffective assistance of counsel must show both deficient performance and prejudice. *Id.* at 687. To establish deficient performance, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This showing requires the petitioner to overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

      **2.     Analysis**

The Court observes, at the outset, that Petitioner fails to meaningfully engage with AEDPA's standard of review. He repeats the de novo arguments from his state-court briefing and then asserts, in a cursory manner, that the state court unreasonably applied federal law by "not consider[ing] the totality of the many errors by trial counsel." Petitioner's omission is significant. As just noted, by itself, AEDPA's standard is "difficult to meet" and "highly deferential." *Ross*, 29 F.4th at 1042 (quoting *Cullen*, 563 U.S. at 181).

When it applies in tandem with the "highly deferential" standard of *Strickland*, review is "doubly" deferential. *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). In the absence of argument, Petitioner fails to overcome that deference. *See Ochoa v. Davis*, 16 F.4th 1314, 1325 (9th Cir. 2021) ("The petitioner bears the burden of proof under AEDPA." (citing *Richter*, 562 U.S. at 98)).

Regardless, the Court's review confirms that the Arizona Court of Appeals' decision was not objectively unreasonable.

**Claim (1)(b):** Petitioner claims that counsel was ineffective because (1) she failed to secure the plea offer that was discussed at the settlement conference, (2) she gave him only two days to consider the second plea offer, (3) she failed to request an extension of the deadline for accepting the second offer, (4) she did not ensure that he had a "fair grasp" of the offer, and (5) she did not give him an opportunity to hear his recorded phone calls before making a decision on the offer. The state court rejected Petitioner's claim under both prongs of *Strickland*. (Doc. 1-4 at 72–73.)

In denying relief, the state court observed that Petitioner "avowed to the court he had read the plea, understood it, and that counsel had answered his questions about it." (*Id.* at 73.) The state court further observed that Petitioner had "not identified any provision of the plea offer he did not understand." (*Id.*) In fact, the state court noted, while Petitioner alleged that he mistakenly believed the offer required consecutive sentences, he was not mistaken: the offer stated the sentences "shall run consecutively." (*Id.*) These circumstances indicate that Petitioner fully understood the plea offer. Therefore, the state court could reasonably find that counsel did not perform deficiently in explaining the offer and in giving Petitioner only two days to consider it.

The state court noted that counsel informed Petitioner "no other plea offer was available," and that Petitioner had not shown the prosecutor "would have been obligated to keep the offer open" even if counsel had requested an extension. (*Id.*) Further, the prosecutor was clear at the *Donald* hearing that the plea offer was expiring regardless of whether Petitioner obtained new counsel, and the trial court notified Petitioner that "[t]here

1  won't be a plea agreement offered after today." (Doc. 1-6 at 12, 14.) In short, the offer was
2  entirely within the prosecutor's control. Under those circumstances, the state court could
3  reasonably find that counsel was not deficient in failing to secure a different offer, and that
4  Petitioner was not prejudiced by counsel's failure to request an extension of the plea
5  deadline.

6  Finally, the state court noted that Petitioner had "cited no authority suggesting that
7  any competent attorney would have necessarily ensured he had access to th[e] recordings
8  before deciding whether to accept the state's plea offer." (Doc. 1-4 at 73.) He does not do
9  so here, either. Petitioner knew the content of the calls because he participated in them.
10 (*Id.*) He knew the calls could damage his case because the settlement judge told him so.
11 (*See* Doc. 1-5 at 39 ("But the jury is not going to look kindly on the fact that you conspired
12 with [Martin], so to speak, to make sure that the statements were in line.").) In that context,
13 the state court could reasonably find that Petitioner had not overcome the presumption that
14 counsel's conduct was reasonable.

15 **Claim (2):** In several recorded phone calls, Petitioner encouraged Martin to fire her
16 attorney and to write a letter directing blame onto herself. (Doc. 1-7.) The recordings
17 indicate that Petitioner eventually wrote Martin's admission for her. (*Id.* at 25.) Petitioner
18 claims that counsel was ineffective for failing to object to introduction of the recordings at
19 trial. The state court disagreed, finding that Petitioner had not overcome the presumption
20 that counsel acted reasonably. (Doc. 1-4 at 73.)

21 Petitioner does not dispute that his attempts to persuade Martin were relevant and
22 admissible, so counsel could not have been deficient for failing to object to those parts of
23 the recordings. While Petitioner is probably correct that most of the content on the
24 recordings was irrelevant, it does not follow that counsel was ineffective for failing to raise
25 that objection. The irrelevant parts were largely innocuous, and counsel could have
26 reasonably refrained from objecting on that basis. Thus, the state court could reasonably
27 find that Petitioner failed to demonstrate deficient performance.

28 **Claim (3):** At trial, the victim asserted ownership over numerous items found in

Petitioner's possession, including a ring that purportedly belonged to Petitioner. Petitioner claims that counsel was ineffective for failing to impeach the victim's testimony about the ring. The state court disagreed, finding that Petitioner had not overcome the presumption that counsel acted reasonably. (Doc. 1-4 at 73.)

Petitioner and Martin stole "several items with a total value in excess of $1,000, including tools and jewelry." (Doc. 10-1 at 56.) Considering the other valuable items that were stolen, counsel could have reasonably believed that it would not help Petitioner's case to raise a dispute over a single item. Alternatively, counsel could have reasonably refrained from challenging the victim to avoid provoking an adverse reaction from the jury. Counsel may also have believed that the jury simply would not believe Petitioner's evidence over the victim's testimony. In light of these possibilities, the state court could reasonably find that Petitioner failed to demonstrate deficient performance.

**Claim (4):** Petitioner claims that counsel was ineffective for failing to file a motion to suppress the victim's identification of him at a "one person show up." The state court rejected this claim because Petitioner "d[id] not assert that he told counsel the victim had seen him in custody and acknowledge[d] there was no such evidence presented," and because Petitioner did not "contest the trial court's conclusion that his identity was not an issue at trial." (Doc. 1-4 at 73–74.)

Notably, notwithstanding the state court's criticisms, Petitioner still does not allege that his identity was an issue at trial, or even that the jury heard evidence that he was identified at a "one person show up." Counsel was not deficient for failing to challenge an identification that may not even have occurred. *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."). Thus, the state court could reasonably find that Petitioner failed to demonstrate deficient performance.

**Claim (5):** Petitioner claims that counsel was ineffective for failing to file a sentencing memorandum and for failing to visit him before the sentencing hearing. The state court disagreed, finding that Petitioner had not overcome the presumption that counsel

- 12 -

acted reasonably. (Doc. 1-4 at 73.)

At the sentencing hearing, counsel emphasized that Petitioner's criminal history, while extensive, was entirely nonviolent, and that Petitioner's crimes were the product of his struggle with drug addiction. (Doc. 10-1 at 90–93.) Counsel also emphasized that Petitioner suffered from posttraumatic stress disorder, depression, and panic attacks, conditions which had previously gone untreated. (*Id.* at 86, 91–92.) Counsel objected to the 35-year recommendation, arguing that Petitioner had never served more than four years at a time and that it would be "insane" and "irresponsible" to "warehous[e] somebody for the rest of his life because he's got a drug addiction and a history of breaking into people's property." (*Id.* at 90–93.) Counsel also pointed out that Martin had received probation for her comparable role in the offenses. (*Id.* at 94.) Counsel argued that while Martin did not have a criminal history, her sentence reflected the less serious nature of property crimes, and that the court should "keep that in perspective" when sentencing Petitioner. (*Id.*) Finally, after the court imposed consecutive sentences, counsel urged the court to reconsider, arguing that the offenses were sufficiently related so that they should run concurrently, and that the consecutive sentences were "tantamount to a life sentence" for "a property crimes case." (*Id.* at 98–99.)

Notwithstanding counsel's alleged shortcomings, he did advocate on Petitioner's behalf. The state court could reasonably find that Petitioner failed to demonstrate deficient performance.

**Conclusion**

The Court finds that the petition is timely, that several of Petitioner's claims are procedurally defaulted without excuse, and that Petitioner's remaining claims lack merit. Therefore,

**IT IS RECOMMENDED** that Petitioner Ronco Cardenas's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) be **denied** and **dismissed with prejudice**.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 14 days from the date of service of this

recommendation to file specific written objections with the district court. The parties have 14 days to file responses to any objections. Fed. R. Civ. P. 72(b)(2). The parties may not file replies absent permission from the district court. The failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

The Clerk of Court is directed to **terminate** the referral of this matter. Filed objections should bear the following case number: **CV-21-00431-TUC-RM**.

Dated this 20th day of March, 2023.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge